UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

PROSIGHT SYNDICATE 1110 at Lloyd's and
IRONSHORE SPECIALTY INSURANCE COMPANY,

     Plaintiff,

v.

STEVEN MARKS, PODHURST ORSECK, P.A.,
JEFFREY SOFFER, DANIEL RIORDAN, PAULA
RIORDAN, ALEX KRYS, NORTH AMERICAN
ELITE INSURANCE COMPANY as underwriter
for SWISS RE, a New Hampshire Corporation,
SOUTHWEST TRANSPORT SERVICES, LTD., a
Delaware Corporation, BEECHAM LIMITED, a Bahamian
Corporation, PIONEER CARIBBEAN LOGISTICS
LIMITED, a Bahamian Corporation, JASON SWEENEY,
DAVID PEARCE, FRANK VALDEZ, PLEASANT HILL
ENTERTAINMENT LIMITED, a Bahamian Corporation,
and DARIA PASTOUKHOVA GOGOLEVA, individually
and as the natural parent and legal guardian of the minor
children A.P.V., N.M.P.V., and L.P.V., and as the Personal
Representative of the ESTATE OF LANCE VALDEZ,

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, ProSight Syndicate 1110 at Lloyd's ("ProSight"), a syndicate organized in the

United Kingdom, and Ironshore Specialty Insurance Company ("Ironshore," together with

ProSight, "Plaintiffs"), an Arizona corporation, by and through undersigned counsel, sues

Defendants Steven Marks ("Marks"), Podhurst Orseck, P.A. ("The Firm"), a Florida corporation,

Jeffrey Soffer ("Soffer"), Daniel Riordan, Paula Riordan, Alex Krys, North American Elite

Insurance Company as Underwriter for Swiss Re, a New Hampshire corporation, Southwest

Transport Services, Ltd., a Delaware corporation, Beecham Limited, a Bahamian corporation, Pioneer Caribbean Logistics Limited, a Bahamian corporation, Jason Sweeney, David Pearce, Frank Valdez, Pleasant Hill Entertainment, Limited, a Bahamian corporation, and Daria Pastoukhova Gogoleva, individually and as the natural parent and legal guardian of the minor children A.P.V., N.M.P.V., and L.P.V., and as the Personal Representative of the Estate of Lance Valdez ("Gogoleva"), and hereby submits as follows:

## INTRODUCTION

1. This is an action for Declaratory Relief, in which Plaintiffs seeks a judgment that there is no insurance indemnification coverage available to Defendants Steven Marks and Podhurst Orseck, P.A. under ProSight's Primary Lawyers Professional Liability Insurance Certificate numbered PL2013LPL90019 ("Lead Policy") or Ironshore's Memorandum of Insurance numbered 00174110 ("Quota Share Policy," together with the Lead Policy, the "Policy") for the claims made against Marks and The Firm in a lawsuit filed in the Eleventh Judicial Circuit in and for Miami-Dade County captioned *Daria Gogoleva, individually and as the natural parent and legal guardian of A.P.V., N.M.P.V. and L.P.V., and as the Personal Representative of the Estate of Lance Valdez v. Jeffrey Soffer, et al.*, Case Number 14-000716-CA-13 (the "Underlying Lawsuit").

2. The Underlying Lawsuit arises out of the death of Lance Valdez, purportedly as a result of a helicopter crash that occurred on November 22, 2012, and the resulting settlement of any potential claims arising out of that crash. Gogoleva, individually, as the guardian of her three children, and as personal representative of the Estate of Lance Valdez, brought suit against various people and entities, alleging that the true facts of the helicopter crash were covered up in an attempt to induce her to settle any potential claims she might have against potentially culpable parties.

3.      Gogoleva claims in her Third Amended Complaint that Defendants Marks and The Firm, ProSight's insureds, attempted to settle her claims "on the cheap" because, according to Gogoleva, Marks was a "compromised lawyer who would stop at nothing to please his longtime clients" the alleged pilot of the helicopter, Mr. Soffer, and his family owned businesses and Turnberry Associates.  [Ex. 1, ¶ 23].[1]

4.      In this lawsuit, Plaintiffs ask this Court for a declaration that the Policy does not obligate them to indemnify Marks or The Firm based on the allegations of the Third Amended Complaint of the Underlying Lawsuit ("Complaint") a copy of which is attached hereto as Ex. 1.

## JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction pursuant to 28 U.S.C.S. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.  Further, this action is based on 28 U.S.C.S. §§ 2201-2202.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because all material facts relating to this declaratory judgment action and the Underlying Lawsuit occurred in this district.

## PARTIES

7.      ProSight is an insurance syndicate comprised of two named corporate members participating in the Lead Policy as foreign corporations organized and incorporated within the United Kingdom with their principal place of business within the United Kingdom. The syndicate is licensed and authorized to engage in the business of issuing insurance in the State of Florida and

---

[1] The Third Amended Complaint is attached as an exhibit for illustrative purposes and should not be considered as an admission of any of the allegations contained within that document.

at all times complied with Florida law governing its insurance business in this State.   The citizenship of the subscribing syndicate members are as follows:

| Underwriter Name | Percentage of Policy | Citizenship |
| --- | --- | --- |
| R&Q Capital No. 6 Limited f/k/a ProSight Specialty (ECUCM) Limited | 50% | United Kingdom |
| R&Q Capital No. 7 Limited f/k/a ProSight Specialty (TSMC) Limited | 50% | United Kingdom |

8.     Ironshore is an insurance company organized and incorporated within the state of Arizona with its principal place of business in Arizona. Ironshore is licensed as a surplus carrier and eligible to engage in the business of issuing insurance in the State of Florida and at all times complied with Florida law governing its insurance business in the State, including the issuance of the Quota Share Policy.

9.     Upon information and belief, Defendant Marks is a partner at The Firm, and is domiciled in Miami, Florida, is over the age of majority and is otherwise *sui juris*.

10.     Upon information and belief, Defendant, Podhurst Orseck, P.A. is a law firm organized as a professional corporation under the laws of the State of Florida with its principal place of business in the State of Florida.

11.     Upon information and belief, Defendant Jeffrey Soffer ("Soffer") is domiciled in Miami-Dade County, Florida, is over the age of majority and is otherwise *sui juris*.

12.     Upon information and belief, Defendant Daniel Riordan is domiciled in Miami-Dade County, Florida, is over the age of majority and is otherwise *sui juris*.

13.     Upon information and belief, Defendant Paula Riordan is domiciled in Miami-Dade County, Florida, is over the age of majority and is otherwise *sui juris*.

14.     Upon information and belief, Defendant Alex Krys ("Krys") is domiciled in Miami-Dade County, Florida, is over the age of majority and is otherwise *sui juris*.

15.     Upon information and belief, Defendant North American Elite Insurance Company, as underwriter for Swiss Re is a New Hampshire corporation doing business in the State of Florida with its principle place of business in Manchester, New Hampshire.

16.     Upon information and belief, Defendant Southwest Transport Services, Ltd. is a Delaware corporation.

17.     Upon information and belief, Defendant Beecham Limited is a dissolved corporation organized and incorporated in Nassau, Bahamas.

18.     Upon information and belief, Defendant Pioneer Caribbean Logistics Limited is a dissolved corporation organized and incorporated in Nassau, Bahamas.

19.     Upon information and belief, Defendant Jason Sweeney is domiciled in the Republic of Ireland, is over the age of majority and is otherwise *sui juris*.

20.     Upon information and belief, Defendant David Pearce is domiciled in the Bahamas, is over the age of majority and is otherwise *sui juris*.

21.     Upon information and belief, Defendant Frank Valdez is domiciled in Texas, is over the age of majority, and is otherwise *sui juris*.

22.     Upon information and belief, Pleasant Hill Entertainment Limited is organized and incorporated in Nassau, Bahamas, with its principal place of business in Nassau, Bahamas.

23.     Upon information and belief, Defendant Daria Pastoukhova Gogoleva, is domiciled in Lyford Cay, Nassau, Bahamas, is over the age of majority and is otherwise *sui juris*; she is represented in her individual capacity as well as representing her children in her capacity as the

5

parent and legal guardian of "A.P.V.," "N.M.P.V.," and "L.P.V." and as the Personal Representative of the Estate of Lance Valdez.

24.     Upon information and belief, Defendant "A.P.V." is the minor child of Gogoleva and is a domiciliary of Lyford Cay, Nassau, Bahamas.

25.     Upon information and belief, Defendant "N.M.P.V." is the minor child of Gogoleva and is a domiciliary of Lyford Cay, Nassau, Bahamas.

26.     Upon information and belief, Defendant "L.P.V." is the minor child of Gogoleva and is a domiciliary of Lyford Cay, Nassau, Bahamas.

**GENERAL ALLEGATIONS**

The Policy

27.      Plaintiffs reincorporate and re-allege paragraphs 1 - 26 above.

28.     ProSight issued a claims-made, claims-reported Primary Lawyers Professional Liability Policy to Podhurst Orseck, P.A. under policy number PL2013PL90019, for the coverage period beginning July 27, 2013 and ending July 27, 2014, otherwise known as the Lead Policy, a copy of which is attached hereto as Ex. 2.

29.     The insuring language of the Lead Policy is as follows:

> **I.     COVERAGE**
> The Insurer will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as **Damages** for **Claims** first made against the Insured and reported to the Insurer during the **Certificate Period**, subsequent renewal thereof, or any applicable Extended Reporting Period arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** for others by an **Insured** covered under this certificate.    Provided always that such **Professional Services** or **Personal** injury happen:
>
> **A.**     during the **Certificate Period**; or

6

**B**      prior to the **Certificate Period** provided that prior to the effective date of the first Lawyers Professional Liability Insurance Certificate issued by this Insurer to the **Named Insured** or **Predecessor in Business**, and continuously renewed and maintained in effect to the inception of this certificate period:

1.    the **Insured** did not give notice to any prior insurer of any such act, error, omission or **Personal Injury**;

2.    the **Named Insured**, any partner, shareholder, employee, or where appropriate the **Named Insured's** management committee or any member thereof, had no reasonable basis to believe that the **Insured** had breached a professional duty or to reasonably foresee that a **Claim** would be made against the **Insured**; and

3.    there is no prior certificate or certificates which provide insurance (including any Automatic or Optional Extended Reporting Period or similar provision) of such certificates for such **Claim**, unless the available limits of liability of such prior certificate or certificates are insufficient to pay any **Claim**, in which event this certificate will be **Specific Excess** over any such prior coverage, subject to this certificate's terms, limits of liability, exclusions and conditions.

30.    The Lead Policy defines when a Claim if first made in Section V. WHEN A CLAIM IS DEEMED FIRST MADE as follows:

A **Claim** shall be deemed as being first made at the earlier of the following times:

A. When the Insurer first receives written notice from the **Insured** or its representative that a **Claim** has been made; or

B. When the Insurer first receives written notice from the **Insured** or its representative of specific circumstances or a **Potential Claim** involving a particular person or entity which may result in a **Claim**.

All **Claims** arising out of the same or related act, error, omission or **Personal Injury** shall be considered as having been made at the time the first such **Claim** is made, and shall be subject to the same limit of liability and deductible.

7

31.     The Lead Policy defines "Claim" in Section VIII. DEFINITIONS as follows:

"**Claim**" means a demand for money or services, of the filing of suit or institution of arbitration proceedings or **Alternative Dispute Resolution** naming an **Insured** and alleging an act, error, or omission or **Personal Injury** resulting from the rendering or failing to render **Professional Services**.    **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief….

32.     The Lead Policy defines "Damages" in Section VIII. DEFINITIONS as follows:

**"Damages"** means compensatory judgments, settlements or awards but does not include punitive or exemplary damages, sanctions, fines or penalties assessed directly against any Insured, the return of fees or other consideration paid to the Insured, or that portion of any award or judgment caused by the trebling or multiplication of actual damages under federal or state law.

33.     The Lead Policy also contains the following Exclusions:

VII. EXCLUSIONS

This insurance does not apply to any **Claims**…

B.  Arising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation (including but not limited to, actual or alleged violations of state or federal antitrust, price-fixing, restraint of trade, copyright or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of any **Insured**; however, we will provide a defense of such actions until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling or legal admission as dishonest, fraudulent, criminal or malicious.

34.     Ironshore issued a Memorandum of Insurance to Podhurst Orseck, P.A. under

policy number 001741100, for the coverage period beginning July 27, 2013 and ending July 27,

2014, otherwise known as the Quota Share Policy, a copy of which is attached hereto as Ex. 3.

8

35.     The insuring language of the Quota Share Policy states that the "**PARTICULARS OF INSURANCE** ... Lawyers Professional Liability Insurance, following the terms and conditions as outlined in the Lead Policy."

36.     During the policy period, Marks and The Firm made a Claim under the Policy ("Notice") for professional services which were provided to Gogoleva as a result of a helicopter crash which occurred on November 22, 2012 and reported it to the Plaintiffs.

The Underlying Lawsuit

37.     The Underlying Lawsuit was initiated on January 10, 2014.

38.     The initial Complaint was later amended by the Amended Complaint filed on April 7, 2014, the Second Amended Complaint filed on September 29, 2014 and the Third Amended Complaint filed on July 25, 2016.

39.     The Complaint in the Underlying Lawsuit alleges that on November 22, 2012, David Pearce piloted and flew a helicopter owned by Pioneer Caribbean Logistics Limited to Marsh Harbor, the Bahamas, to pick up Lance Valdez and his friends, Jeffrey Soffer and the Riordans.  [Ex. 1, ¶¶ 32, 123.]

40.     The Complaint in the Underlying Lawsuit alleges that once Valdez, Soffer and the Riordans were on board the helicopter, Soffer requested to and did pilot the helicopter from Marsh Harbor to Bakers Bay, Bahamas.  [Ex. 1, ¶¶ 35-36.]

41.     The Complaint in the Underlying Lawsuit alleges that Soffer did not have a license to fly the subject helicopter.  [Ex. 1, ¶ 28.]

42.     The Complaint in the Underlying Lawsuit alleges that Soffer lost control of the subject helicopter, causing the helicopter to spin out of control and crash into the ground.  [Ex. 1, ¶ 46.]

43.     The Complaint in the Underlying Lawsuit alleges that Soffer was the cause of the helicopter crash.  [Ex. 1, ¶ 47.]

44.     It is alleged in the Complaint in the Underlying Lawsuit that Lance Valdez died as a result of the accident, and that Soffer, the Riordans and Pearce were all injured. [Ex. 1, ¶¶ 24, 48-51, 58.]

45.     The Complaint in the Underlying Lawsuit alleges claims of fraudulent inducement and civil conspiracy, in which "Soffer, together with the Riordans, Krys, Marks and one or more others, conspired and otherwise acted in a way that was intended to conceal from Daria Pastoukhova, [Gogoleva] and others acting on her behalf, the fact that Soffer, and not David Pearce, was flying the Helicopter at the time of the Helicopter Crash and that Soffer's negligence was primarily, if not solely, responsible for the death of Lance Valdez, in an effort to focus the Plaintiffs on an insurance recovery and ultimately release Soffer and the Riordans from liability (the 'Conspiracy')."  [Ex. 1, ¶ 30.]

46.     The Complaint in the Underlying Lawsuit indicates that following the crash, Gogoleva was repeatedly advised that Pearce was piloting the helicopter, not Soffer.  [Ex. 1, ¶¶ 66, 74.]

47.     Specifically, the Complaint in the Underlying Lawsuit alleges that two days following the crash, Defendant Krys, the President and COO of Turnberry Associates[2], urged Defendant Gogoleva to retain The Firm as her counsel to pursue the insurance proceeds from the owner of the helicopter.  [Ex. 1, ¶¶ 65, 68-70 83-84.]

---

[2] Turnberry Associates is alleged to be one of the premier real estate development and property management companies in the United States. [Ex. 1, ¶ 5.]  Defendant Soffer is the principal, chairman and CEO of Turnberry Associates [Ex. 1, ¶ 5.]

48. The Complaint in the Underlying Lawsuit alleges that The Firm had a long and personal relationship with Mr. Soffer and his family, and that The Firm would have a conflict in the simultaneous and concurrent representation of Soffer, the Riordans and Gogoleva, if in fact Soffer was flying the helicopter at the time of the crash. [Ex. 1, ¶¶ 83-85.]

49. The Complaint in the Underlying Lawsuit alleges that prior to Gogoleva's retainer of Marks that Marks knew that Pearce had declared that he was not in control of the subject helicopter at the time of the crash. [Ex. 1, ¶ 99.]

50. The Complaint in the Underlying alleges that Marks attempted to convince Gogoleva to retain him and The Firm and in doing so "proclaimed [to Gogoleva] that Marks and the Podhurst Firm were the best choice of lawyers to represent Daria and the Minor Children Marks stated that he and the Podhurst Firm could assist Daria and the Minor Children in obtaining, through other available insurance policies maintained by Soffer, or Soffer controlled companies, an enhanced recovery of damages in respect of Lance Valdez' death." [Ex. 1, ¶ 101.]

51. The Complaint in the Underlying Lawsuit also alleges that prior to being retained, Marks never disclosed to Gogoleva that he had become aware of Pearce's assertion that he was not flying the subject helicopter. [Ex. 1, ¶ 104.]

52. The Complaint in the Underlying Lawsuit also states that Marks "failed to advise [Gogoleva] of the potential conflict" in representing her if Soffer did in fact pilot the helicopter, and "failed to obtain a written waiver of same." [Ex. 1, ¶¶ 105, 112, 113, 116.]

53. Additionally, the Complaint in the Underlying Lawsuit further states that Marks failed to obtain a written waiver of conflict of interest with regard to The Firm's longstanding relationship with the Soffer family and Soffer's potential status as a defendant. [Ex. 1, ¶¶ 112-116.]

54.     Further, the Complaint in the Underlying Lawsuit states that "Marks assured Daria that Soffer did not pilot the Helicopter at the time of the Crash and further stated that even if it turned out that Soffer was flying the Helicopter at the time of the Helicopter Crash, it would not matter because Pearce was the 'Pilot in Command.'"  [Ex. 1, ¶ 108.]  It is further alleged that Marks failed to explain the term "Pilot in Command" to misdirect Gogoleva in his initial discussions with her.  [Ex. 1, ¶ 109.]

55.     Importantly, the Complaint in the Underlying Lawsuit alleges that Marks "willfully and intentionally failed and refrained from explaining to Daria that, even if Pearce was the 'Pilot in Command', Soffer could also be liable directly to the Plaintiffs if Soffer was actually in control of and flying the Helicopter at the time of the Crash and that an investigation of those facts was both necessary and appropriate."  [Ex. 1, ¶ 110.]

56.     The Complaint in the Underlying Lawsuit claims that Marks' and The Firm's conflicts and failure to disclose facts prior to their retention "vitiate the full and fair advice of counsel and representation of [Gogoleva, A.P.V., N.M.P.V. and L.P.V.]; and, in turn, vitiate the viability and enforceability of the Release as it relates to Soffer and the Riordans.  [Ex. 1, ¶ 117.]

57.     Gogoleva retained Marks and The Firm to represent her with regards to the helicopter crash on or about December 5, 2012.  [Ex. 1, ¶ 118.]

58.     The Complaint in the Underlying Lawsuit claims that Soffer and the Riordans simultaneously retained Marks and The Firm with regard to the Helicopter Crash.  [Ex. 1, ¶ 119.]

59.     The Complaint in the Underlying Lawsuit alleges that following their retainer, Marks and The Firm failed to obtain any written waiver of conflicts of dual representation.  [Ex. 1, ¶ 119.]

12

60.     The Complaint in the Underlying Lawsuit claims that on December 10, 2012, Marks, purporting to act on Gogoleva's, the Estate's, A.P.V.'s, N.M.P.V.'s and L.P.V.'s, Soffer's and the Riordans' behalf made a 30-day written demand to NAE for the single combined policy limit on the Helicopter of $2,000,000 to extinguish all of his clients' claims.  [Ex. 1, ¶¶ 120-122.]

61.     The Complaint in the Underlying Lawsuit claims that around December 10, 2012, Marks urged Sweeney, as an officer of Pioneer Caribbean Logistics Limited[3], to not seek a statement of Pearce and that Sweeney in turn did not take the statement or assist his insurance carrier, NAE, in their attempt to interview Mr. Pearce.  [Ex. 1, ¶ 123.]

62.     The Complaint in the Underlying Lawsuit alleges that, "[k]nowing that Pearce had declared that Soffer was flying the Helicopter, Marks and the Podhurst Firm were required to: (a) conduct a detailed investigation of the underlying facts; and (b) disclose to the Plaintiffs what Pearce stated to Marks' Investigator regarding Soffer's control of the Helicopter before Marks and the Podhurst Firm could take on the concurrent multi-party representation of Soffer and the Riordans as their clients in conflict with the interests of Plaintiffs, and before they could craft and implement the Release between the parties; and obtain a written waiver and consent of any potential conflict."  [Ex. 1, ¶ 132.]

63.     The Complaint in the Underlying Lawsuit also alleges that Marks did not advise Gogoleva that she might recover "exponentially greater damages from Soffer, as compared to accepting the $2 million in insurance proceeds [from NAE]."  [Ex. 1, ¶ 135.]

64.     The Complaint in the Underlying Lawsuit claims that Marks advised Gogoleva that NAE "required that there be reciprocal and mutual releases among and between [Gogoleva], the

---

[3] Pioneer Caribbean Logistics Limited was the owner of the subject Helicopter.

Minor Children, Soffer and the Riordans, as condition to the payment of the $2 million in insurance proceeds." [Ex. 1, ¶¶ 137-141.]

65.     The Complaint in the Underlying Lawsuit claims Marks misrepresented facts concerning the insurance carrier's requirement that Soffer and the Riordans be released. [Ex. 1, ¶¶ 137-141.]

66.     NAE paid $2 million in insurance proceeds to release all claims against its insureds. [Ex. 1, ¶ 142.]

67.     The Complaint in the Underlying Lawsuit claims that Marks instructed Gogoleva to sign the Release and advised her "he was becoming increasingly concerned that the delay in concluding the settlement would not be in her best interests, and might lead NAE to invoke 'coverage defenses.'" [Ex. 1, ¶ 147.]

68.     The Complaint in the Underlying Lawsuit alleges that Gogoleva ultimately signed the release as a result of "the false or erroneous statement of Marks that the Insurance Carrier was requiring a mutual release among the Releasors and that it was of no import if Soffer was flying because Pearce was the 'Pilot in Command' on March 13, 2013…." [Ex. 1, ¶ 158.]

69.     The Complaint in the Underlying Lawsuit claims that Gogoleva was unaware of the falsity of the statements by Marks and others and that she would not have executed the release had she known the truth of who was piloting the Helicopter at the time of the crash. [Ex. 1, ¶ 159.]

70.     The Complaint in the Underlying Lawsuit states "but for the fraud perpetrated by …. Marks, [Gogoleva] would not have signed the Release." [Ex. 1, ¶ 163.]

71.     Count II of the Complaint in the Underlying Lawsuit for Fraudulent Inducement against Marks and The Firm, alleges that:

  a. Soffer, the Riordans and Krys, directly and indirectly through Marks and The Firm, "including by their respective failures of full and fair disclosure, and by their intentionally deceptive and/or coercive statements and conducted or induced Daria to sign the Release based on information that was knowingly false." [Ex. 1, ¶ 185.]

  b. That Marks "assisted in keeping Soffer and the Riordans away from any such investigations by such authorities." [Ex. 1, ¶ 189.] And,

  c. That Marks advanced the same story and claims as the other Defendants concerning the piloting of the Helicopter. [Ex. 1, ¶ 202.]

72. Count III of the Complaint in the Underlying Complaint, for Conspiracy against Marks and The Firm, alleges that:

  a. Marks intentionally deceived, coerced, pursuaded or induced Gogoleva to sign the release; [Ex. 1, ¶ 211.]

  b. Marks, Soffer, the Riordans and Krys agreed to fraudulently induce Gogoleva into believing Soffer was not flying at the time of the Crash and induce her to sign the release in favor of Soffer; [Ex. 1, ¶ 212.]

  c. In furtherance of the Conspiracy, Marks, The Firm and Aaron Podhurst induced Gogoleva into retaining Marks and The Firm despite conflicts of interests; [Ex. 1, ¶ 215.]

  d. Marks and others misrepresented several facts; [Ex. 1, ¶ 221.] and,

  e. As a direct and proximate result of those misrepresentations, Gogoleva, A.P.V., N.M.P.V. and L.P.V. suffered damages. [Ex. 1, ¶ 222.]

15

73.     Count IV of the Complaint in the Underlying Complaint for Recission against Marks and The Firm does not seek damanges, but instead seeks a judgment of rescission of the Release.  [Ex. 1, ¶¶ 223-249.]

74.     Count IV of the Complaint in the Underlying Lawsuit also alleges: (1) Marks' "failures of full and fair disclosure, and by their intentionally deceptive and/or coercive conduct, exerted undue influence in persuading Daria to sign the Release based on information that was knowingly false," [Ex. 1, ¶ 228] (2) Gogoleva relied on Marks' misresentations and omissions, [Ex. 1, ¶ 229] and (3) the Release was obtained by fraud and/or unilateral mistake and misapprehension of material facts withheld by Marks.  [Ex. 1, ¶ 237.]

75.     Count VIII of the Complaint in the Underlying Lawsuit for Declaratory Judgment against Marks and The Firm, does not seek damages, but instead seeks a judgment that the release is unenforceable and void.  [Ex. 1, ¶¶ 270-283.]

## COUNT I – DECLARATORY RELIEF

76.     Plaintiffs reincorporates and realleges paragraphs 1 - 75 above.

77.     An actual, immediate controversy exists among the parties regarding whether indemnity coverage is afforded for the claims made against Marks and The Firm in the Complaint in the Underlying Lawsuit.

78.     Plaintiffs and Defendants are in dispute as to ProSight's rights, obligations and duties, if any, owed to Marks and The Firm, pursuant to the terms and conditions of the Policy and are in need of a judicial declaration regarding same.

79.     Defendants are necessary parties to this declaratory judgment action as this action affects coverage for claims and damages being asserted by them and/or against them.

80.     All conditions precedent to filing this action have been performed, have occurred or have been waived.

81.     As more specifically detailed above, the Complaint in the Underlying Lawsuit allege a cause of action against Marks and The Firm which arise out of the same or related act, error, omission which were initially brought to Plaintiffs' attention in the Notice.

82.     Plaintiffs are currently defending Marks and The Firm against the Complaint in the Underlying Lawsuit.

83.     The only counts in the Complaint from the Underlying Lawsuit against Marks and The Firm are Counts II, III, IV and VIII.

84.     Counts II and III of the Complaint in the Underlying Lawsuit arise out of dishonest, fraudulent, malicious acts or omissions, or deliberate misrepresentations.

85.     Counts IV and VIII of the Complaint in the Underlying Lawsuit solely seek judicial determinations and do not seek damages.

86.     Plaintiffs have no duty to indemnify Marks or The Firm from and against the allegations of Counts II and III of the Complaint in the Underlying Lawsuit because those counts arise out of "dishonest, fraudulent, criminal or malicious act[s] or omission, or deliberate misrepresentation[s]" and are therefore barred from coverage pursuant to Exclusion B.

87.     Plaintiffs have no duty to indemnify Marks or The Firm from or against the allegations of Counts IV and VIII of the Complaint in the Underlying Lawsuit because Counts IV and VIII do not seek "damages" as they are defined by the Policy.

88.     Plaintiffs have no duty to indemnify Marks or The Firm from any other claims in the Complaint from the Underlying Lawsuit because there are no other allegations against them.

89.  Plaintiffs seek the Court's intervention to make the following findings:

a.  Marks and The Firm are not entitled to any indemnification coverage for Counts II or III of the Third Amended Complaint in the Underlying Lawsuit because those allegations are barred by Exclusion B of the Policy.

b.  There is no coverage for Marks or The Firm for the Rescission count (Count IV) and Declaratory Judgment count (Count VIII) of the Third Amended Complaint in the Underlying Lawsuit because they do not seek "damages" as defined by the Policy.

c.  Plaintiffs have no duty to indemnify Marks or The Firm for any damages sought in the Third Amended Complaint in the Underlying Lawsuit;

d.  Plaintiffs have complied with all conditions precedent to the filing of this lawsuit.

WHEREFORE, ProSight and Ironshore pray this Court declare as follows:

A.  That this Court has jurisdiction over this matter;

B.  That this Court has jurisdiction over the parties in this matter;

C.  That ProSight and Ironshore have no duty to indemnify Marks or The Firm for any damages sought in the Third Amended Complaint in the Underlying Lawsuit based on the terms, conditions and exclusions of the Policy; and

D.  Such other relief as this Court deems just and proper.

Dated: <u>September 18, 2018</u>                    Respectfully submitted,

<u>/s/ *John B. Aktinson*</u>
JOHN BOND ATKINSON
Florida Bar No.:  0290270
jatkinson@atkattorneys.com
JOHN B. ATKINSON

18

Florida Bar No.: 0099691
atkinsonjb@atkattorneys.com
Atkinson, P.A.
1 S.E. 3rd Avenue, Suite 2100
Miami, Florida 33131
Tel.  305-376-8840
Fax. 305-376-8841
*Counsel for Plaintiffs*