UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
**Case Number: 18-23849-CIV-MARTINEZ**

PROSIGHT SYNDICATE 1110 AT LLOYDS, *et al.*,

      Plaintiff,

v.

STEVEN MARKS, *et al.*,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

THIS MATTER is before the Court on four motions to dismiss filed by Defendants Steven Marks and Podhurst Orseck, P.A; Jeffrey Soffer, Daniel Riordan, and Paula Riordan; Alex Krys; and Daria Pastoukhova Gogoleva. [ECF Nos. 54, 61, 62, 71]. Plaintiffs ProSight Syndicate 1110 at Lloyd's and Ironshore Specialty Insurance Company filed an omnibus opposition response, and all movants, except Gogoleva, filed replies. [ECF Nos. 74, 76–78].

For the reasons stated below, the Court grants in part and denies in part the motions to dismiss.

## I.    Background

Plaintiffs filed here a one-count complaint for declaratory relief, seeking a declaration that they have no duty to indemnify their insureds, Marks and the Podhurst firm, for claims filed against them by Gogoleva in Florida state court. The state-court case is still ongoing, and Plaintiffs have assumed their insured's defense. Therefore, this lawsuit does not concern Plaintiffs' duty to *defend*, but only their duty to *indemnify*.

This dispute stems from a helicopter crash in the Bahamas, which killed Gogoleva's

husband, Lance Valdez. According to the state-court complaint, David Pearce, a licensed helicopter pilot, flew a helicopter to the airport in Marsh Harbor, Bahamas, with Valdez to pick up Soffer and the Riordans. On arrival, Soffer asked to fly the helicopter to Bakers Bay. Soffer had told Pearce that he, Soffer, was a licensed helicopter pilot—he was not.

The state-court complaint then alleges that Soffer flew the helicopter to Bakers Bay. As it neared the landing pad, the helicopter experienced turbulence. Soffer, inexperienced at flying helicopters, lost control. The helicopter crashed, killing Valdez and injuring Pearce and the other passengers.

The state-court complaint continues that two days after the crash, Krys—at that time the president and chief operating officer of Turnberry Associates, a prominent real-estate developer and property manager—visited Valdez's wife, Gogoleva. Krys suggested that Gogoleva hire Marks and the Podhurst firm to represent her and her minor children. Soffer and the Riordans also retained Marks and the Podhurst firm.

Gogoleva alleges that Marks advised her to pursue an insurance claim against the helicopter owner, Pioneer Caribbean Logistics Limited's, insurance carrier. They then urged her to sign a mutual release among and between herself, her children, Soffer, the Riordans and North American Elite Insurance Company, the helicopter owner's insurer. She did, and in exchange, North American Elite Insurance paid out $2 million.

Gogoleva, however, claims that Podhurst, Marks, Soffer, the Riordans, and Krys conspired to fraudulently induce her to sign the release to protect Soffer and the Riordans from potential liability. Soffer is a billionaire—he is the CEO and a principal of Turnberry. Daniel Riordan is the president and COO of Turnberry's residential division. And the Soffer family, Turnberry, and other Soffer-owned businesses are long-time clients of Marks and the Podhurst firm.

2

Gogoleva alleges many facts and, according to her, falsities in her state-court complaint that she believes proves the conspiracy and the motivations behind the conspiracy. Suffice it to say here that, according to Gogoleva, Marks and the alleged co-conspirators led her to believe that Pearce, and not Soffer, had been piloting the helicopter when it crashed. Had she known the truth, Gogoleva says that she would not have signed the release and would have instead sued the billionaire, Soffer.

Gogoleva raised several claims in state court: wrongful death against Soffer; fraudulent inducement against Soffer, Marks, the Podhurst firm, the Riordans, and Krys; conspiracy against those parties and other, unidentified co-conspirators, if any; rescission against the alleged conspirators and other parties joined solely for the rescission claim; negligence, negligent supervision, and negligent entrustment against the helicopter owner, Pioneer; and, finally, declaratory judgment against all the defendants. That lawsuit, titled *Gogoleva, individually and as the natural parent and legal guardian of A.P.V., N.M.P.V., and L.P.V. and as the Personal Representative of the Estate of Lance Valdez v. Jeffrey Soffer, et al.*, Case No. 14-00716-CA-13, is still pending. A five-day, non-jury trial is set to begin on November 18, 2019.

ProSight and Ironshore are Marks' and the Podhurst firm's insurers. The insurers admit in their complaint here that they are "defending" Marks and the Podhurst firm in the underlying action. [ECF No. 1 at 17]. But they seek a declaration from this Court that they have "no duty to indemnify" Marks or the Podhurst firm for any damages Gogoleva seeks in state court. [ECF No. 1 at 18].

## II.   Discussion

Although the movants raise several grounds for dismissal, the Court need only address one issue: whether the declaratory-judgment action is premature given that it seeks a declaration on a

3

duty to indemnify for damages in an underlying lawsuit that is still pending. In March of this year, the Eleventh Circuit issued an unpublished opinion, affirming a district court's dismissal of a similar declaratory-judgment action because the insurers "duty to indemnify was not ripe for adjudication until the underlying lawsuit was resolved." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 769 (11th Cir. 2019). The Court finds that opinion and the litany of similar cases in this district persuasive.

In *Mid-Continent*, homeowners had sued a drywall and stucco company for providing defective work, among other claims. *Id.* The company's insurer assumed the state-court defense and then filed a declaratory judgment action in federal court to clarify its duty to indemnify its insured. *Id.* The district court ordered the insurer to show cause as to why its duty to indemnify was ripe given that the underlying case remained pending. *Id.* The district court then dismissed the case without prejudice as prematurely filed. *Id.* at 769–70.

The Eleventh Circuit affirmed the decision, holding that the district court did not abuse its discretion in dismissing the case. *Id.* at 770. The Eleventh Circuit explained that although it had "not directly addressed whether it is appropriate for a district court to assess an insurer's duty to indemnify before the underlying lawsuit is resolved," it had addressed the issue in another unpublished opinion, in which the Court held that "[t]he duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims." *Id.* (quoting *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014)). The Eleventh Circuit also noted that "many district courts in this circuit have ruled that an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established." *Mid-Continent*, 766 F. App'x at 770 (collecting cases). The Eleventh Circuit "agree[d] with these cases and the district court's conclusion that [the insurer's] duty to indemnify

4

[the drywall company] [was] not ripe for adjudication until the underlying lawsuit [was] resolved." *Id.*

The Eleventh Circuit then addressed the possible "exception to the ripeness rule" that one district court had posited: "if the court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify," then "the court could adequately assess the duty to indemnify prior to a conclusion on the merits of the underlying litigation." *Id.* at 771 (citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001)). Regarding this putative exception, the Eleventh Circuit had three responses. First, *Northland* is not binding on the Court. *Id.* Second, to the extent that *Northland* is persuasive authority, *Northland* merely said that a court "could" assess a premature duty-to-indemnify claim under some circumstances, not that it *must* to do so. *Id.* And third, cases that did apply the exception did so only when they had already concluded that the insurer had no duty to *defend*, because "the duty to indemnify cannot exist if there is no duty to defend." *Id.* (quoting *Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*, 228 F.Supp.3d 1313, 1325–26 (S.D. Fla. 2017)).

This case and *Mid-Continent* are nearly identical. Like the insurer in *Mid-Continent*, ProSight and Ironshore assumed the defense of their insureds, Marks and the Podhurst firm, and then filed a declaration-judgment action, angling for a declaration that they have no duty to indemnify. The underlying state-court case is still pending (and set for trial in November of this year). Therefore, because any duty to indemnify depends on the outcome of Gogolova's case, any declaration as to that duty is premature until Gogolova's case is resolved. *See, e.g., Mid-Continent*, 766 F. App'x at 769–71.

Moreover, like the appellant in *Mid-Continent*, ProSight and Ironshore argue that the exception in *Northland* applies here. To that, the Court adopts *Mid-Continent's* panel's view of

*Northland.* First, *Northland* is not binding on this Court: "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

Second, even if the Court considered *Northland* persuasive authority, it would merely *permit* the Court to consider an unripe duty-to-indemnify claim. *Northland* does not *require* the Court to do so. And that view is consistent with the nature of the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

Third, the Court concurs with *Mid-Continent* that cases applying *Northland* did so in factually distinguishable situations, namely, where the district court had found that the insurer had no duty to defend, and therefore, no duty to indemnify. *See Evanston Ins. Co. v. Europa Bldg. Assocs., Inc.*, No. 18-CV-80174, 2019 WL 656216, at *4 (S.D. Fla. Jan. 15, 2019) (applying *Northland* exception where defendants did not contest plaintiff's contention that it had no duty to defend); *David R. Farbstein, P.A. v. Wesport Ins. Corp.*, No. 16-CV-62361, 2017 WL 3425327, at *9 (S.D. Fla. Aug. 9, 2017) (applying *Northland* exception where the Court found that insurer had no duty to defend, and therefore, no duty to indemnify, given "Florida's well-settled principle that there cannot be a duty to indemnify without a duty to defend"); *see also GEICO Indem. Ins. Co. v. Silva*, No. 15-81330-CIV, 2017 WL 5634717, at *5 n.6 (S.D. Fla. Jan. 4, 2017) ("Except where there is no duty to indemnify for want of a duty to defend, a decision as to Geico's duty to indemnify is premature.").

ProSight and Ironshore cite to no cases that have applied the *Northland* exception to situations analogous to this case. And in fact, the cases they do cite declined to rule on the duty to indemnify because the underlying case remained pending. *See S. Coatings, Inc. v. Century Sur.*

6

*Co.*, No. 07-80558-CIV, 2008 WL 954178, at *4 (S.D. Fla. Apr. 8, 2008) (holding that "narrow exception" in *Northland* "does not apply here because . . . the allegations and the supporting record create a potentiality that coverage exists"); *IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1351 (S.D. Fla. 2004) (holding that "[a]ny declaration as to the duty to indemnify is premature unless there has been a resolution in the underlying lawsuit" and the Court "is not aware of any resolution in" the underlying state-court action).

In addition, the Court finds *Northland's* exception logical but impractical when it comes to situations like the one here. It logically follows that if there are genuinely no circumstances in an underlying action where an insurer would have to pay insurance proceeds, then a court can safely tackle the question of whether there is a duty to indemnify—although, again, it does not have to. So for example, where a court has already concluded that there is no duty to defend, then it can rule as a matter of law that there is no duty to indemnify. *See, e.g., David R. Farbstein*, 2017 WL 3425327, at *9. But ProSight and Ironshore's no-duty-to-indemnify claim is fact-intensive and dependent on how the state court rules.

Specifically, both their no-duty position and their *Northland* argument are premised on one exclusion within their policies, which reads as follows:

VII. EXCLUSIONS

This insurance does not apply to any Claims...

B. Arising out of any dishonest, fraudulent, criminal or malicious act or omission, or deliberate misrepresentation (including but not limited to, actual or alleged violations of state or federal antitrust, price-fixing, restraint of trade, copyright or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of any Insured; however, we will provide a defense of such actions until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling or legal admission as dishonest, fraudulent, criminal or malicious.

[ECF No. 1, p. 8]. According to ProSight and Ironshore, to win a damages award for fraudulent

7

inducement or civil conspiracy, Gogoleva would need to prove that Marks and the Podhurst firm committed a "dishonest, criminal or malicious act or omission or deliberate misrepresentation," which would trigger the exclusion. The Court is not convinced.

"In contrast to the duty to defend, which is triggered by the allegations of the complaint, the duty to indemnify is determined from the actual facts and circumstances giving rise to the complaint." *Nat'l Fire & Marine Ins. Co. v. Elysium of Boca Raton, Inc.*, No. 05-80707-CIV, 2006 WL 8433656, at *4 (S.D. Fla. July 6, 2006). "Therefore, because an insurer's duty to indemnify is dependent on the outcome of the case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Id.* As such, where the allegations *and the supporting record* still create some possibility that coverage may exist, the question of indemnity, absent a resolution of the underlying case, is premature. *Am. Home Assurance Co. v. Peninsula Ii Developers, Inc.*, No. 09-23691-CIV, 2010 WL 11451836, at *3 n.6 (S.D. Fla. June 28, 2010) (finding that "exception [to ripeness rule] cannot apply because the allegations and supporting record create some possibility that coverage may exist").

The Court is uncomfortable conclusively determining the applicability of this policy exclusion at the motion to dismiss stage, without the benefit of discovery and while possibly invading the state court's domain. *See Liberty Mut. Ins. Co. v. Mark Yacht Club on Brickell Bay, Inc.*, No. 09-20022-CIV, 2009 WL 10668946, at *2 (S.D. Fla. Apr. 24, 2009) (expressing similar trepidation when addressing the *Northland* exception). The Eleventh Circuit has similarly "cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of . . . insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured." *Canopius US Ins., Inc. v. Coconut Grove Wine Co.*, No. 1:16-CV-21970-KMM, 2017 WL 5634939, at *5 (S.D. Fla. June 26, 2017) (declining to apply *Northland* exception)

8

(quoting *Edwards v. Sharkey*, 747 F. 2d 684, 686 (11th Cir. 1984)); *see also Empire Indem. Ins. Co. v. Todd James, Inc.*, No. 06-61317-CIV, 2007 WL 9700598, at *1 n.1 (S.D. Fla. Dec. 21, 2007) (finding that no-exception conclusion "is supported by the additional consideration that a ruling by this Court on indemnification could encroach on the resolution of the ongoing state proceedings").

Moreover, ProSight and Ironshore have not persuaded the Court that the exclusion conclusively applies. Because ProSight and Ironshore's *Northland* argument depends on the application of an exclusion, then to show that there are *no* circumstances whatsoever under which they would have to indemnify Marks and the Podhurst firm, the insurers would have to irrefutably show that the exclusion applies. The insurer bears the burden of proving that an exclusion to coverage applies. *Cammarota v. Penn-Am. Ins. Co.*, No. 17-CV-21605, 2017 WL 5956881, at *3 (S.D. Fla. Nov. 13, 2017). They have not met that burden, nor have they attempted to do so in earnest. Instead, they take it as a given that any damages award *must* be accompanied by conduct that implicates the exclusion. The Court disagrees.

It is not a given that a damages award will necessarily include a finding of dishonest, fraudulent, criminal, or malicious conduct. Even if the answer is that the state court would *likely* find such conduct, that is not enough: this Court would need to find that there are no circumstances at all where the state court would do otherwise. This Court declines the invitation to make such a finding.

Instead, the Court agrees with Marks and the Podhurst firm's position that when the "labels" in the state-court complaint are distinguished from the facts that may give rise to liability, there remains the possibility that the state court may find them liable for covered claims akin to professional negligence. [ECF No. 77, p. 9]. Moreover, there is no indication that Gogoleva is

9

precluded from amending her complain to add different claims. Lastly, it does not escape the Court's attention that the exclusion *itself* says that the insurers will defend the case "until such time as the act is ruled either by trial verdict, court ruling, regulatory ruling or legal admission as dishonest, fraudulent, criminal or malicious." [ECF No. 1, p. 8]. The state court has yet to make such as ruling.

In short, any resolution of a duty to indemnify is premature, warranting dismissal.[1]

## III.  Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED** that

1.      The motions to dismiss [ECF Nos. 54, 61, 62, 71] are **GRANTED in part and DENIED in part,** as set forth here.

2.      This case is **DISMISSED WITHOUT PREJUDICE.**

3.      The Clerk of Court is instructed to **CLOSE THIS CASE** and **DENY AS MOOT** all other pending motions.

DONE AND ORDERED in Chambers at Miami, Florida, this 26 day of June, 2019.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

---

[1] Based on this ruling, the Court need not address the individual Defendants' jurisdictional arguments or the nine abstention factors outlined in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005). *Mid-Continent*, 766 F. App'x at 770 n.1 (finding that because the district court found that duty to indemnify was not ripe, it did not need to address the *Ameritas* factors).